# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 09 CR 302** |
| | ) | |
| **DAVID G. SKLENA** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant David Sklena's (Sklena) post-trial motions. For the reasons stated below, the post-trial motions are denied.

## BACKGROUND

Sklena was indicted on March 31, 2009, and charged with six Counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts I-VI), one count of commodity fraud in violation of 7 U.S.C. § 6b(a)(1)(i) and 13(a)(2) (Count VII), and two counts of non-competitive futures contract trading in violation of 7 U.S.C. § 13(a)(5) (Counts VIII and IX). Sklena's co-Defendant Edward Sarvey (Sarvey) was charged in Counts I-VI with wire fraud, in Count VII with commodity fraud, and in Counts VIII and IX with non-competitive futures contract trading. Sarvey also was charged with non-competitive futures contract trading in Counts X and XI. After the indictment,

and before the trial, Sarvey passed away. On July 29, 2010, the parties advised the court that the parties have agreed to proceed in a bench trial and the parties submitted to the court a document titled "Waiver of Right to Trial by Jury," signed by Sklena and Sklena's attorney. On the same document, the Government consented to the waiver by Sklena of a trial by a jury. On October 1, 2010, a hearing was held at which time Sklena was advised by the court of his trial rights and Sklena knowingly and voluntarily waived his right to a jury trial. The court then agreed to hold a bench trial in the instant action. The bench trial began on October 4, 2010. During the trial, the Government moved to dismiss Counts III and IV against Sklena and the court dismissed those counts.

After the Government rested on its case-in-chief, Sklena moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 (Rule 29) (First Rule 29 Motion), and for dismissal of Counts VIII and IX pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) (Rule 12(b)(3)(B)). The court denied Sklena's First Rule 29 Motion considering the evidence in the light or aspect most favorable to the Government. Sklena's counsel indicated that the court need not address the Rule 12(b)(3)(B) motion at that time. The court reserved judgment on Sklena's Rule 12(b)(3)(B) motion. Sklena decided not to present any evidence during his case-in-chief. Sklena was then advised by the court as to his right to

testify if he chose to do so, and as to his right not to testify in his own trial. Sklena then indicated to the court that he had decided not to testify at his trial. The court then found that Sklena voluntarily waived his right to testify at his trial. Sklena then rested on his case-in-chief. Thereafter, both parties rested on the entire case. Sklena then again moved for a judgment of acquittal under Rule 29 (Second Rule 29 Motion). The court stated that no new evidence had been presented since the court ruled on Sklena's First Rule 29 Motion, but the court reserved its ruling on Sklena's Second Rule 29 Motion and indicated that the court would state its ruling as part of its written decision. On November 23, 2010, the court denied Sklena's Rule 12(b)(3)(B) motion and Sklena's Second Rule 29 Motion. The court also found Sklena guilty on Counts I and II, and V through IX. Sklena has now filed a motion for judgment of acquittal and a motion for a new trial. In addition to the written filings of the parties, Sklena asked for an opportunity to make oral arguments to the court. Both parties were given an opportunity to make oral arguments and both parties made oral arguments on April 7, 2011.

**LEGAL STANDARD**

A defendant in a criminal case who has been found guilty by a jury may move for an acquittal under Federal Rule of Criminal Procedure 29(c). Fed. R. Crim. P.

29(c).  If the defendant is challenging the sufficiency of the evidence presented at trial, the court must "consider the evidence in the light most favorable to the prosecution, drawing all reasonable inferences in the government's favor," and a "[r]eversal is appropriate only when, after viewing the evidence in such a manner, no rational jury 'could have found the defendant to have committed the essential elements of the crime.'"  *United States v. Macari*, 453 F.3d 926, 936 (7th Cir. 2006)(quoting *United States v. Masten,* 170 F.3d 790, 794 (7th Cir. 1999)); *see also United States v. Pree*, 408 F.3d 855, 865 (7th Cir. 2005)(stating that a motion for acquittal should be granted "only if, viewing the evidence in the light most favorable to the Government, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt"); *United States v. Gougis*, 432 F.3d 735, 743-44 (7th Cir. 2005)(stating that a defendant who challenges the sufficiency of the evidence "faces a nearly insurmountable hurdle")(citation omitted).

Pursuant to Rule 33(a), "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires" and "[i]f the case was tried without a jury, the court may take additional testimony and enter a new judgment."  Fed. R. Civ. P. 33(a).

**DISCUSSION**

I.  Incorporation of Prior Arguments

Sklena indicates that although his written motion for judgment of acquittal presents arguments only on one element of the charges brought against him, he "incorporates by reference his oral motion for judgment of acquittal made on October 7, 2010 at the close of the government's case, his closing argument, and his response to the government's proposed findings and conclusions."  (Mot. Acquit 1 n.2). Sklena also indicates vaguely that although his motion for a new trial "focuses" on issues, he "renews all of his pretrial and trial motions and objections."  (Mot. New Tr. 1).  The court notes that it is incumbent upon Sklena, as the movant, to provide specific arguments as to why he is entitled to a judgment of acquittal or new trial based on his written motions.  *See, e.g., DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999)(stating that "[e]ven when a litigant has unused space . . . incorporation is a pointless imposition on the court's time" and that "[a] brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record"); *Soto v. United States*, 2005 WL 3078177, at *6 (D.N.J. 2005)(stating that "[b]asic fairness requires that an opposing party have a fair notice of his adversary's claims, as well as an opportunity to address those claims"

and that the court "need not address the merits of undeveloped and unsupported claims").

The court after considering the oral arguments made by Sklena's counsel during the entirety of the trial, at the close of the Government's case in chief, based on the record at that juncture and the parties' oral arguments, denied Sklena's First Rule 29 Motion. Sklena has not presented any new arguments in his instant written motion or during the oral arguments on the instant motion that would show that Sklena is entitled to a judgment of acquittal or a new trial.

## II. Appropriateness of Rule 29 Motion

The Government contends that a Rule 29 Motion is not appropriate at this juncture since Sklena's plea of not guilty acted as a request for a judgment of acquittal and the court subsequently has acted as the trier of fact and convicted Sklena. The Seventh Circuit has indicated that "[t]he rule that a motion for a judgment of acquittal must be made to preserve the issue of evidence sufficiency on appeal . . . is inapplicable in" a case "which was tried to the court." *United States v. Hogan*, 89 F.3d 403, 404 (7th Cir. 1996). The Seventh Circuit has held that "in a case tried to the court it is unnecessary to move formally for a judgment of acquittal" since "[t]he plea of not guilty asks the court for a judgment of acquittal and a motion

to the same end is not necessary." *Id.* (internal quotations omitted).

Since Sklena pled not-guilty in this action and the court subsequently acted as the trier of fact and convicted Sklena, a Rule 29 Motion at this juncture is not appropriate. As indicated above in the legal standard for the Rule 29 Motion, Rule 29 entails an evaluation by the court of the rationality of the trier of fact. Rule 29, when employed after a trial and verdict, provides a check upon the power of the jury, allowing the court to nullify the verdict of a jury that has acted unreasonably. It would not make any more sense for a court to evaluate itself for reasonableness than it would be for a jury to be asked, after rendering a verdict, to decide whether it had acted reasonably. In addition, this court already denied a Rule 29 motion in this case presented by Sklena and since that ruling no new evidence has been presented. It serves no legitimate purpose to have this court evaluate at this juncture whether it acted reasonably. The court also notes that the court already rendered a verdict as the trier of fact and found that the Government had met its burden of proof and the instant motion requires the court to first construe all evidence in favor of the Government and then decide whether a reversal is appropriate. If, based on a neutral review of the evidence during the trial, when first viewing all the evidence in the light most favorable to the Government in accordance with the instant Rule 29 Motion, Sklena faces an ever tougher burden for reversal with the same record of

evidence.

Sklena contends that the court is obligated to review its own ruling in order to provide Sklena with due process as though Sklena has no means to challenge the verdict in this case. Sklena has the right to seek an appeal. Redundant rulings by this court does not serve judicial economy and Sklena's attempt in the instant motion to take another bite at the apple would result in a waste of judicial resources and those of the Government. Thus, the instant Rule 29 Motion is improperly brought at this juncture.

III.  Merits of Rule 29 Motion

Even if it is found that the Rule 29 Motion is appropriate at this juncture, the court finds that the motion lacks any merit. Sklena argues that for him to have held the requisite knowledge and intent for his convictions he had to have known that the 2,274 contracts he purchased from Sarvey belonged to Sarvey's customers rather than to Sarvey. Sklena contends that the Government failed to establish such knowledge, and therefore argues that the Government failed to prove its case beyond a reasonable doubt.

A.  Actual Knowledge of Ownership of Contracts

Sklena argues that the court erred in concluding that the Government had

shown that Sklena had actual knowledge that the 2,274 contracts he bought from

Sarvey belonged to Sarvey's customers, rather than to Sarvey himself.  Sklena

contends that the Government had to prove beyond a reasonable doubt that Sklena

knew that the 2,274 contracts he bought from Sarvey were being sold by Sarvey for

Sarvey's customers, rather than being traded by Sarvey from his personal account.

However, there was ample evidence presented at trial from which to reasonably infer

that Sklena had the requisite knowledge.  For example, at trial the Government

introduced evidence in the form of statements made by Sklena himself at prior

hearings and a prior deposition.  Although Sklena opted not to present a case-in-

chief, Sklena's own prior statements were admitted and in addition, Sklena was

given the opportunity to bring out evidence regarding his prior statements when

cross-examining the Government's witnesses.


1.  Testimony at Prior Hearings

Sklena's own testimony at hearings prior to the trial clearly showed that he

knew that the 2,274 contracts he bought from Sarvey came from Sarvey's customers.

Sklena had previously testified at an arbitration hearing that he had purchased the

2,274 contracts, "from the broker next to" him. (G Ex. DS Tb1 32). Sklena argues that such testimony merely indicates that he knew that at times Sarvey acted as a broker as well as a local and Sklena contends that the court speculated in its ruling. However, the evidence at trial showed that an individual who trades for his customers is known as a broker and when an individual trades for his own account, the individual is known as a trader or a local. In addition, evidence at trial showed that an individual can, on any given day, act as a broker when trading on behalf of the individual's customers, and act as a trader or a local when trading on the individual's own account. The evidence showed that Sklena had extensive experience both as a trader and as a broker. Therefore, as a person with such experience, Sklena would not have stated that he had purchased the 2,274 contracts, "from the broker next to" him if Sklena did not believe that Sarvey was not acting as a "broker" (trading shares that belonged to his customers) relating to that sale. (G Ex. DS Tb1 32). Sklena did not simply say that he bought shares from Sarvey and that Sarvey was at times a broker and at times a trader or a local. Sklena testified that he "bought the 2,274 lot from the broker next to" him. (G Ex. DS Tb1 32). Sklena has not shown that the court erred in concluding that Sklena was purchasing the 2,274 contracts from Sarvey with the understanding that Sarvey was acting as a broker.

In addition, at his testimony in a disciplinary hearing, Sklena testified that Sarvey was a broker on April 2, 2004, and there were other traders around Sarvey who were acting as locals to Sarvey's brokerage, including Sklena. (G Ex. DS Tb3 163). That statement by Sklena unquestionably shows his understanding that Sarvey was a broker who was trading shares that belonged to his customers at the pertinent time. Again, Sklena now argues that the court should have made inferences that favor his position, but he has not shown that the inferences drawn by this court were unreasonable.

## 2. CFTC Deposition

Sklena also made statements during a deposition (CFTC deposition) in proceedings initiated by the Commodity Futures Trading Commission (CFTC) that show his knowledge of the fact that Sarvey was trading shares that belonged to his customers at the pertinent time.

For example, at the CFTC deposition, Sklena was asked if, to his knowledge, Sarvey received any complaints from his customers about the price that Sarvey's customers received for their futures contracts, Sklena replied "absolutely not" and that Sarvey "didn't [receive complaints] from his customers." (G Ex. DS Tb4 98). Sklena argues that he could have merely been indicating that he understood at the

time of the deposition but not at the time of the trading that Sarvey was trading on his customers' accounts. However, Sklena knew that the deposition was concerning fraud upon Sarvey's customers and Sklena did not answer the question by stating that there was no customers involved, and therefore, no complaints could have been received from Sarvey's customers. Sklena answered the question that Sarvey did not receive any complaints from his customers in an apparent attempt to mitigate the effects of his involvement in the scheme. This piece of evidence was merely a small part of the whole body of evidence that showed Sklena's knowledge. Thus, the statements made by Sklena showed that he knew that Sarvey was trading for his customers when Sarvey sold 2,274 contracts to Sklena.

Sklena argues that there was evidence introduced at trial that indicated that he did not possess the requisite actual knowledge and thus the Government did not prove its case beyond a reasonable doubt. Sklena points, for example, to evidence referring to chaotic conditions in the trading area during the time in question. The fact that conditions were chaotic does not translate that Sklena did not know that Sarvey was acting as a broker at the time of the transaction in question. Sklena has not shown that the court erred in its verdict. Sklena merely attempts to argue that the court erred because it did not agree with the inferences proposed by him. Sklena argues that because of the chaotic conditions it is unlikely that a scheme was

perpetrated at that time. However, the opportunity arose for Sarvey and Sklena to make a considerable profit at the expense of Sarvey's customers, and Sklena and Sarvey used that opportunity that presented itself when the market was volatile and there was chaotic conditions. It is also plausible that the chaotic conditions and the volatile market presented Sklena and Sarvey with a unique opportunity to perpetrate the non-competitive trading scheme and avoid detection amidst the chaotic conditions. It was unfortunate for Sklena that a Chicago Board of Trade (CBOT) investigator, amid such a chaotic day, observed an unusual activity taking place in the pit between Sarvey and Sklena that led to the discovery of the instant offenses.

Sklena also argues that the court engaged in speculation in arriving at certain facts. For example, Sklena points to the court's finding that "Sklena as a local in the same pit would have paid close attention to the activities of Sarvey and the other brokers." (Mot. Acquit. 4). Sklena contends that such a finding is based on speculation. However, such a finding by the court was based on the evidence. Simply because the court made inferences from the evidence at trial that were not in favor of Sklena does not mean that the court engaged in speculation. Sklena has not shown that it was an unreasonable inference for this court to conclude that Sklena, based on his extensive experience and the nature of the business that required

vigilant attention and quick reaction to actions by others in the pit would have naturally been paying close attention to Sarvey and others in the pit. The court made reasonable inferences from the evidence presented at trial which is appropriate for the trier of fact to do when assessing all evidence, including circumstantial evidence. Sklena has not shown that the court engaged in any unreasonable speculation in arriving at its findings.

Sklena also contends that the Government has supported its arguments only by pointing to "snippets" of statements made by Sklena. Sklena contends that the Government has not addressed certain testimony that favored his positions. However, the burden was on the Government during the trial to prove its case beyond a reasonable doubt, and the Government met that burden. Based on all the evidence presented at trial, the Government met its burden to show that Sklena possessed the requisite knowledge. The Government is not required to touch on every piece of evidence in responding to the instant motion. This court has fully considered Sklena's motions and arguments and the Government's responses.

Sklena also cites *United States v. Jones*, 371 F.3d 363 (7th Cir. 2004) for the proposition that "although a jury may infer facts from other facts derived by inference, each link in the chain of inferences must be sufficiently strong to avoid a lapse into speculation." *Id.* at 366 (internal quotations omitted)(quoting in part

*United States v. Peters,* 277 F.3d 963, 967 (7th Cir. 2002)).  In the instant action, the court has considered all the evidence, without engaging in speculation, and has arrived at the conclusion that Sklena possessed the requisite knowledge.  Sklena's own prior statements and the other evidence presented at trial directly pointed to the only reasonable conclusion, which was that Sklena possessed the requisite knowledge.  Based on the above-referenced examples of statements made by Sklena and other evidence presented at trial, the Government proved beyond a reasonable doubt that Sklena had actual knowledge that the 2,274 contracts he bought from Sarvey came from Sarvey's customers, rather than from Sarvey's personal account.

### B.  Deliberate Avoidance

The Government clearly met its burden of proof relating to the requisite actual knowledge by Sklena.  Even if the Government had not met its burden to prove that Sklena had knowledge that the 2,274 contracts he bought from Sarvey came from Sarvey's customers rather than from Sarvey's personal account, the Government proved that Sklena engaged in deliberate avoidance of knowledge of the information.  Seventh Circuit Pattern Criminal Federal Jury Instruction 4.06, which is referred to as the ostrich instruction, provides in part the following:

Knowledge may be proved by the defendant's conduct, and by all the facts and

circumstances surrounding the case.  You may infer knowledge from a combination of suspicion and indifference to the truth.  If you find that a person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly, as I have used that word.  You may not conclude that the defendant had knowledge if he was merely negligent in not discovering the truth.

Instruction 4.06, *Seventh Circuit Pattern Criminal Federal Jury Instructions*.  The Seventh Circuit has held that "if a defendant claims a lack of guilty knowledge," despite the defendant's contention, the defendant's knowledge can be inferred if "the evidence supports an inference of deliberate avoidance. . . ."  *United States v. Leahy*, 464 F.3d 773, 796 (7th Cir. 2006); *United States v. Ciesiolka*, 614 F.3d 347, 351 (7th Cir. 2010).  Deliberate avoidance occurs when "a defendant deliberately avoided acquiring knowledge of the crime being committed by cutting off his curiosity through an effort of the will."  *Id.*  A defendant is not guilty of deliberate avoidance if the defendant is merely negligent in failing to discover the truth.  *United States v. Tanner*, 628 F.3d 890, 904-05 (7th Cir. 2010).

In the instant action, aside from the evidence of actual knowledge on the part of Sklena, there was evidence showing a deliberate avoidance by Sklena of knowledge that Sarvey was trading for his customers as a broker at the pertinent point.  For example, Sklena explained in the CFTC deposition that he thought that his purchase of the 2,274 contracts from Sarvey was a "no-risk" trade  because the

market price was going up. (G Ex. DS Tb1 47, Tb4 84-85, 116). It is apparent, based on such an assertion and the evidence presented at trial, that Sklena should have realized that Sarvey was not trading his own contracts when the price was going up, because that would not have been a reasonable trading strategy for Sarvey.

If Sarvey was trading for himself as opposed to acting as a broker for his customers as to the sale of the 2,274 contracts, Sarvey would not have sold the 2,274 contracts to Sklena for approximately $2 Million less than the going rate. The evidence at trial showed that Sklena bought the 2,274 contracts at 111.065 when the market was trading higher than 112. Sklena made a risk-free profit and such profits belonged to Sarvey's customers, even though Sarvey's customers would have accepted a price of 111.065. The court also notes that, as part of the scheme, after Sklena bought the 2,274 contracts from Sarvey for less than the going rate, Sklena then immediately sold back to Sarvey approximately 500 contracts as a trader (not a broker) for also less than the going rate, resulting in profits to Sklena and Sarvey that belonged to Sarvey's customers.

Sklena in his reply argues that the Government neglected to point to testimony by Sklena at the CFTC deposition that Sklena was asked if he knew "if Sarvey did a trade for Mitsubishi" on the day in question, and Sklena stated: "I did not know. I don't care who he does 'em for." (G Ex. DS Tb4 99). Such a statement by Sklena

merely reflects that Sklena does not care who Sarvey trades for and, in fact, indicates a deliberate avoidance on Sklena's part as to Sarvey's trading activities. Based on the above and the other evidence presented at trial, the Government proved beyond a reasonable doubt that, even if Sklena did not have knowledge, Sklena engaged in deliberate avoidance.

Sklena also argues that the ostrich instruction is not applicable to the instant action, citing in support *United States v. Giovannetti*, 919 F.2d 1223 (7th Cir. 1990). (Mot. Acquit 5). In *Giovannetti*, the court stated that "[t]he most powerful criticism of the ostrich instruction is, precisely, that its tendency is to allow juries to convict upon a finding of negligence for crimes that require intent." *Id.* at 1228. The Seventh Circuit has indicated that the ostrich instruction should be applied with caution "lest the jury get the mistaken impression that it may convict on the basis of mere negligence." *Tanner*, 628 F.3d at 905. However, because this was a bench trial and not a trial before a jury, there was no jury to be misled or confused and the court was fully familiar with the Seventh Circuit precedent. This court did not infer knowledge on the part of Sklena based on mere negligence. Rather, this court concluded that Sklena knew that he was involved in shady dealings. In addition, in accordance with *Giovannetti*, the court concluded that Sklena strongly suspected that he was "involved in shady dealings, [and took] steps to make sure that he d[id] not

acquire full or exact knowledge of the nature and extent of those dealings."  919 F.2d

at 1228.  In *Giovannetti*, the court held that "[a] deliberate effort to avoid guilty

knowledge is all the guilty knowledge the law requires," and in the instant action, the

evidence at trial clearly showed deliberate avoidance on the part of Sklena.  *Id.* The

evidence presented at trial showed that Sklena possessed actual knowledge, and if

Sklena did not possess actual knowledge of the fact that Sarvey was trading on his

customers' accounts, Sklena should have had a very strong suspicion that Sarvey was

doing so and Sklena deliberately avoided learning the truth while profiting from the

venture.  The Government proved beyond a reasonable doubt the requisite actual

knowledge on the part of Sklena, and in addition, even if the Government did not

show actual knowledge, the Government proved beyond a reasonable doubt

deliberate avoidance of knowledge on the part of Sklena.


C.  *Pinkerton* Doctrine

The Government argues that even if it had not shown that Sklena had actual

knowledge or engaged in deliberate avoidance of knowledge, the Government

proved that Sklena was guilty under the *Pinkerton* doctrine.  Under the *Pinkerton*

doctrine, a conspirator is "liable for any foreseeable crimes committed by his fellow

conspirators during and in furtherance of the conspiracy. . . ."  *United States v.*

*Rawlings*, 341 F.3d 657, 660 (7th Cir. 2003)(citing *Pinkerton v. United States*, 328

U.S. 640, 647-48 (1946)); *United States v. Frazier*, 213 F.3d 409, 416 (7th Cir.

2000)(stating that "[u]nder *Pinkerton,* a coconspirator may be held criminally liable

for the foreseeable overt acts of others in furtherance of a conspiracy"); *United States*

*v. Buchannan*, 115 F.3d 445, 452 (7th Cir. 1997)(stating that "[u]nder the Pinkerton

doctrine, a defendant can be convicted of substantive offenses committed by a co-

conspirator if the government proves beyond a reasonable doubt that: (1) the

essential elements of the substantive offense were established, (2) the defendant was

a member of the conspiracy at the time the substantive offense was committed and

(3) the substantive offense was committed in furtherance of or was a natural

consequence of the conspiracy and was reasonably foreseeable by the defendant").

In the instant action, there was ample evidence showing that Sklena and

Sarvey entered into a conspiracy to engage in non-competitive trading and other

illegal acts.  The evidence also showed that Sklena was an experienced trader.  It

therefore, should have been foreseeable to Sklena that in executing the scheme,

Sarvey would use customers' accounts to perpetrate the unlawful conduct resulting in

profits to Sklena and Sarvey that belonged to Sarvey's customers.  It should have

also been foreseeable to Sklena that Sarvey could not have engaged in the fraud

without the active involvement of Sklena.  Thus, the Government also proved that

Sklena was guilty based on the *Pinkerton* doctrine. Based on the above, Sklena has failed to show that when making reasonable inferences in the Government's favor, no rational trier of fact could have found Sklena to have committed the essential elements of the crimes for which he was convicted.

### D.  Punishment and Hardships

In the motion for judgment of acquittal Sklena also raises issues concerning the hardships that he claims to have suffered as a result of his actions. Sklena argues, for example, that his actions have "cost him his livelihood and left him destitute." (Mot. Acquit.6). Sklena also asserts that he still may receive sanctions in the CFTC Action and that "[h]e has paid a heavy price for his conduct that morning almost seven years ago." (Mot. Acquit. 6). The resulting hardships to Sklena however is not relevant in assessing his guilt or in assessing the instant motion for judgment of acquittal. Such arguments may be more appropriate at the sentencing hearing.

Sklena also appears to argue and has advanced the argument during the trial that the trading industry should be responsible in regulating itself and that such regulatory actions should be sufficient as opposed to an indictment in the instant case. However, Congress makes the laws relating to offenses and the Executive branch has the sole authority to decide whether to prosecute individuals for such

offenses.  In addition, the Seventh Circuit, in a case involving various offenses by brokers and traders at the CBOT, including charges of mail and wire fraud and infractions of the Commodity Exchange Act, concluded that "defendants' scheme to deprive CBOT customers of orders filled by the competitive market falls within the purview of the mail and wire fraud statutes" and that its "case law makes clear that even though the customers may not be entitled to any specific price, deliberate refusal to pursue the best price the broker could obtain can constitute a scheme to defraud."  *United States v. Ashman*, 979 F.2d 469, 478 (7th Cir. 1992).  Based on all of the foregoing, Sklena's motion for judgment of acquittal is denied.

## IV.  Motion for a New Trial

Sklena contends that he should receive a new trial, arguing that the court erred in excluding prior testimony of Sarvey.  This court denied Sklena's motion in limine to admit the testimony of Sarvey given in a deposition in the CFTC Action.

### A.  Rule 804(b)(1)

Sklena argues that Sarvey's testimony was admissible under Federal Rule of Evidence 804(b)(1) (Rule 804(b)(1)), which provides that evidence falls within a hearsay exception "if the declarant is unavailable as a witness" and "[t]estimony

given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Fed. R. Evid. 804(b)(1). Sarvey is undisputedly unavailable to testify since he is deceased.

Rule 804(b)(1) is not applicable to Sarvey's testimony because the CFTC and the Department of Justice are not the same party. Although, in the instant motion for a new trial, Sklena attempts to refer to CFTC and the U.S. Attorney's Office of the Department of Justice under the same title of "government," the Government has shown that the CFTC is an independent agency and the U.S. Attorney's Office and the CFTC have their own independent statutory mandates and powers. Nor has Sklena cited any precedent holding that the CFTC and the U.S. Attorney's Office are one and the same for the purposes of Rule 804(b)(1). To assess whether parties had a similar motive a court should consider: "(1) the type of proceeding in which the testimony is given, (2) trial strategy, (3) the potential penalties or financial stakes, and (4) the number of issues and parties." *United States v. Feldman*, 761 F.2d 380, 385 (7th Cir. 1985)(indicating that the strategies and stakes are generally not the same in a civil proceeding as in a criminal proceeding). The Government showed

that Sarvey's earlier testimony was given in a deposition related to civil proceedings, and the penalties and financial stakes were much different. Sklena has not shown that the CFTC had a similar motive to develop the testimony of Sarvey as the Department of Justice has in a criminal prosecution. *Id.* (reversing a district court's admission of prior testimony given before the CFTC); *see also United States v. Kennard*, 472 F.3d 851, 855 (11th Cir. 2006)(upholding a district court's exclusion of deposition testimony based on the district court's finding that a government agency's motive in deposing a witness was dissimilar from that of the United States Attorney in prosecuting defendants). Thus, Sarvey's deposition testimony is not admissible under Rule 804(b)(1). The court also notes that Sklena has not shown that Sarvey's testimony should have been admitted under residual hearsay exception in Federal Rule of Evidence 807. *See Keri*, 458 F.3d at 631 (stating that "[c]ritical to the admission of a hearsay statement under [Rule 807] is a finding by the district court that the statement is trustworthy")(internal quotations omitted).

### B. Meaningful Opportunity to Present a Complete Defense and Rule 403

Sklena also argues that he was deprived of a meaningful opportunity to present a complete defense by the exclusion of Sarvey's prior testimony. Sklena cites *Holmes v. South Carolina*, 547 U.S. 319 (2006) for the proposition that "[a]

defendant in a criminal case is guaranteed under the Constitution "'a meaningful opportunity to present a complete defense.'" *Id.* at 319 (quoting *Crane v. Kentucky,* 476 U.S. 683, 690 (1986). However, the Court in *Holmes* did not hold that a defendant is entitled to avoid the rules of evidence and obtain the admission of any evidence the defendant deems necessary for his defense. The Court in *Holmes* acknowledged that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.*

In the instant action, Sklena was provided a meaningful opportunity to present a defense. Sklena has not shown that Sarvey's testimony was key to his defense and has not shown that Sarvey's testimony should have been admitted in light of the strictures of the Federal Rules of Evidence, such as Federal Rule of Evidence 403 (Rule 403). Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Sklena's own prior testimony and deposition were admitted and Sklena had the opportunity to cross-examine the Government's witnesses. Even though Sklena exercised his right not to testify, he was provided the opportunity to present a

complete defense. Sklena's own self-serving statements made prior to trial were admitted and Sklena's argument that he did not have a meaningful opportunity to present a defense because of the exclusion of Sarvey's self-serving statements made prior to trial is unpersuasive. The court weighed all the relevant factors in deciding to exclude Sarvey's proposed testimony. In addition to the court's analysis above, Sarvey's testimony was excluded because: (1) the proposed testimony of Sarvey was cumulative and was not the only way that Sklena could present his case, (2) the proposed testimony of Sarvey was not trustworthy, in that, it was a self-serving prior statement, (3) the proposed testimony of Sarvey was not admissible because Sarvey, being deceased, was not available for proper cross-examination during the instant criminal trial, and (4) the proposed testimony of Sarvey was not preserved on video tape to allow the trier of fact an opportunity to view Sarvey's demeanor. Sarvey's testimony was not trustworthy, was unreliable, was self-serving hearsay testimony, was cumulative, and was properly excluded at trial. *See Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 631 (7th Cir. 2006)(citing *United States v. Hall,* 165 F.3d 1095, 1110 (7th Cir. 1999)). Thus, Sarvey's testimony was not admissible under Rule 403 and Sklena has not shown that without Sarvey's testimony Sklena did not have a meaningful opportunity to present a complete defense. Therefore, based on the above, the motion for a new trial is denied.

The court has considered all of the arguments, both oral and written, by Sklena on the instant motions, and Sklena has not shown that he should be granted a judgment of acquittal or a new trial.

## CONCLUSION

Based on the foregoing analysis, the motion for a judgment of acquittal and the motion for a new trial are denied.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 9, 2011